Affirmed and Majority and Concurring
Opinions on Remand filed June 21, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00430-CR



Vincent
Brassard Scillitani, Appellant 

v.

The State of
Texas, Appellee 



On appeal from
the County Court at Law No. 2

Fort Bend County, Texas

Trial Court
Cause No. 125238



 

MAJORITY OPINION ON REMAND

Appellant Vincent Brassard Scillitani was convicted
of the offense of driving while intoxicated.  On remand from the Texas Court of
Criminal Appeals this court considers whether the evidence is sufficient to
support his conviction and whether the trial court erred in denying his motion
to suppress evidence of breath-test results.  We affirm.

Factual and Procedural
Background

Trooper Patrick Hackney responded to a 1:58 a.m.
dispatch call involving a single-vehicle accident.  When he arrived on the
scene, the trooper saw a vehicle resting in a ditch and encountered appellant,
who admitted driving the vehicle.  Appellant explained to the officer that he
did not know how he lost control of the vehicle.  At the scene the trooper also
encountered two tow-truck drivers and appellant’s mother.  The trooper learned
that appellant had notified his mother of the accident, and she had arrived
before the trooper.  Trooper Hackney testified that the vehicle appellant was
driving went off the road, into a ditch, and hit a fence pole.  Trooper Hackney
testified there were no skid marks on the road.

The trooper smelled alcohol on appellant’s breath,
but appellant denied having consumed any alcohol.  The trooper conducted
several field sobriety tests. Appellant  exhibited all six clues of
intoxication on the horizontal gaze nystagmus (HGN) test, two of eight clues of
intoxication on the walk-and-turn field test, and no clues of intoxication on
the a one-leg-stand test. Appellant consented to a preliminary breath test,
which confirmed the presence of alcohol on his breath.  In Trooper Hackney’s
opinion, the accident was caused by appellant’s driving while intoxicated and
his driving at an unsafe speed on wet roads.  

Based on the trooper’s observations and field
testing, he placed appellant under arrest for driving while intoxicated. 
Following his arrest, appellant submitted two breath samples on an Intoxilyzer
machine.  The first sample showed appellant’s breath alcohol level to be 0.135
grams of alcohol per 210 liters of breath at 3:32 a.m.  A second sample at 3:35
a.m. showed appellant’s breath alcohol level to be 0.133 grams of alcohol per
210 liters of breath. 

The State charged appellant with the offense of
driving while intoxicated. Appellant pleaded “not guilty” and filed a motion to
suppress the results of the Intoxilyzer breath tests. The trial court denied
the motion.  The jury found appellant guilty as charged.  The trial court assessed
punishment at 180 days in the Fort Bend County Jail, probated for fifteen
months, and a fine of $750.

Appellant appealed his conviction to this court. In
his first issue, appellant challenged the sufficiency of the evidence to
support his conviction and, in his second issue, appellant claimed that the
trial court erred in denying his motion to suppress.  See id.  Relying
upon binding precedent from the Court of Criminal Appeals and opinions from the
First Court of Appeals, this court sustained appellant’s first issue and
concluded that the evidence was legally insufficient to support his
conviction.  See Scillitani v State, 297 S.W.3d 498, 502–03 (Tex.
App.—Houston [14th Dist.] 2009) (relying on Johnson v. State, 517 S.W.2d
536, 538 (Tex. Crim. App. 1975), Stoutner v. State, 36 S.W.3d 716 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d), and Weaver v. State, 721
S.W.2d 495 (Tex. App.—Houston [1st Dist.] 1986, pet. ref’d)), vacated,
315 S.W.3d 542 (Tex. Crim. App. 2010).  This court did not reach the merits of
appellant’s second issue. 

The State filed a petition for discretionary review. 
While the petition was pending, the Court of Criminal Appeals decided a case
with a similar issue.  See Kuciemba v. State, 310 S.W.3d 460
(Tex. Crim. App. 2010).  In response to the State’s petition for review in the
case under review, the high court noted that the intermediate appellate court
in Kuciemba relied on the same cases upon which this court relied in
reversing appellant’s conviction.  See Scillitani v. State, 315 S.W.3d
542, 542 (Tex. Crim. App. 2010) (per curiam).  Because, in reversing the trial
court’s judgment, this court did not have the benefit of the Court of Criminal
Appeals’s opinion in Kuciemba, the high court vacated this court’s
judgment and remanded to this court for consideration in light of that opinion. 
See id.  

Issues and Analysis

Is the evidence sufficient to support appellant’s
conviction for driving while intoxicated?

In his first issue, appellant claims that the
evidence is legally and factually insufficient to show that he drove the
vehicle at the time he was intoxicated.  In evaluating a legal-sufficiency
challenge, we view the evidence in the light most favorable to the verdict.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal
is not whether we, as a court, believe the State’s evidence or believe that
appellant’s evidence outweighs the State’s evidence.  Wicker v. State,
667 S.W.2d 137, 143 (Tex. Crim. App. 1984).  The verdict may not be overturned
unless it is irrational or unsupported by proof beyond a reasonable doubt.  Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The trier of fact “is
the sole judge of the credibility of the witnesses and of the strength of the
evidence.”  Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App.
1999).  The trier of fact may choose to believe or disbelieve any portion of
the witnesses’ testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986).  When faced with conflicting evidence, we presume the trier
of fact resolved conflicts in favor of the prevailing party.  Turro v. State,
867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  Therefore, if any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim.
App. 1997).

A majority of the judges of the Court of Criminal
Appeals have determined that “the Jackson v. Virginia legal-sufficiency
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.”  Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)
(plurality op.) (Hervey, J., joined by Keller, P.J., Keasler, and Cochran,
J.J.); id. at 912–15 (Cochran, J., concurring, joined by Womack, J.)
(same conclusion as plurality).  Therefore, in this case we will review the
evidence only under the Jackson v. Virginia standard, as
articulated in the preceding paragraph.  

A person commits the offense of driving while
intoxicated if that person operates a motor vehicle in a public place while
intoxicated.  Tex. Penal Code Ann.
§ 49.04(a) (West 2011).  One is considered intoxicated if he does not have the
normal use of mental or physical faculties by reason of the introduction of
alcohol, a controlled substance, a drug, a dangerous drug, a combination of
those substances or any other substance into the body or by having an alcohol
concentration of 0.08 or more in his breath, blood, or urine.  See Tex. Penal Code Ann. § 49.01(2)(A)–(B)
(West 2011).

In light of appellant’s admission that he was the
driver of the vehicle, the evidence is sufficient to show that appellant was
driving at the time of the accident.  But there must be a temporal link between
appellant’s intoxication and appellant’s driving.  See Kuciemba, 310
S.W.3d at 462.  A crucial issue in this appeal is what quantum of evidence
would allow a rational trier of fact to find that the evidence establishes this
temporal link beyond a reasonable doubt.  

On remand, appellant relies upon the Court of
Criminal Appeals’s opinion in Johnson v. State, 517 S.W.2d 536
(Tex. Crim. App. 1975), a case upon which this court relied in its opinion on
original submission in the case under review.  See Scillitani, 297
S.W.3d at 503.  In Johnson, a police officer arrived at the scene of a
single-vehicle accident[1]
and found the vehicle in a ditch on the side of the road.  See Johnson v.
State, 517 S.W.2d 536, 537 (Tex. Crim. App. 1975).  Nobody was in
the vehicle, but there were several people nearby, one of whom admitted he was
driving the vehicle when the accident occurred.[2] 
See id.  Upon further investigation, the officer concluded that this
person was intoxicated.  See id.  A test administered more than two-and-a-half
hours after the officer arrived on the scene showed that the person had an
alcohol concentration of .20 in his blood.  See id.  There was no direct
evidence showing when the accident occurred.  See id. at 537–38.  On
this record, the Court of Criminal Appeals concluded that (1) there was no
evidence showing when appellant drove the vehicle; (2) there was no evidence of
how recently the vehicle had been driven; and (3) there was no evidence that
appellant was intoxicated when he drove the vehicle.  See id. at 538. 
The Johnson court held the evidence was legally insufficient to support
the conviction.  See id.

We conclude that the Court of Criminal Appeals
impliedly overruled Johnson in Kuciemba.  See Kuciemba, 310
S.W.3d at 462–63.  In Kuciemba, a police officer arrived at the scene of
a single-vehicle accident and found the vehicle in a ditch on the side of the
road.  See id. at 461.  When the officer arrived a person was in the
driver’s seat of the vehicle, and that person had small cuts on his forehead
and blood running down his face.  See id.  The officer detected the odor
of alcohol on the driver’s breath and determined that the driver was
intoxicated.  See id.  The driver told the officer that he had fallen
asleep.  See id.  But the driver told a paramedic that he had not lost
consciousness, though he did not remember the accident.  See id.  The
paramedic noticed a red strap mark across the driver’s chest where his seat
belt would have been.  See id.  There was testimony that (1) no
alcoholic beverages or containers were found in the vehicle or at the scene,
and (2) that no skid marks were found on the road, indicating that appellant
did not brake before the accident.  See id.  Tests on blood drawn at the
scene showed an alcohol concentration of .214.  See id.

            On
appeal, this court held that the evidence was legally insufficient to support
Kuciemba’s conviction, relying upon several cases, including Johnson.  See
Kuciemba v. State, No. 14-08-00050-CR, 2009 WL 585978, at *3 (Tex.
App.—Houston [14th Dist.] Mar. 10, 2009) (not designated for publication), rev’d,
310 S.W.3d 460 (Tex. Crim. App. 2010).[3] 
The Court of Criminal Appeals granted review and reversed this court’s
judgment.  See Kuciemba, 310 S.W.3d at 461.  In Kuciemba, the
Court of Criminal Appeals did not cite or discuss its prior opinion in Johnson. 
See id. at 462–63.  Nonetheless, the high court in Kuciemba concluded
that a person’s intoxication at the scene of an accident in which the person
was driving a vehicle is some circumstantial evidence that the person was
driving while intoxicated.  See id.
at 462.  The Kuciemba court further stated that (1) the inference that the driver was intoxicated is even
stronger when the accident is a one-vehicle collision with an inanimate object;
(2) a driver’s failure to brake also is some evidence that the driver was
intoxicated; (3) a person’s presence in the driver’s seat, still bleeding,
supports an inference that the accident had occurred a short time previously;
and (4) a high blood alcohol level in blood taken at the accident scene
supports an inference either that the driver was recently involved in the
accident or that he had been intoxicated for quite a while.  See id. at 462–63. 
The Kuciemba court concluded that the
combination of these facts was sufficient to support appellant's conviction for
driving while intoxicated.  See id. at 463.

The Kuciemba
court also cited with approval an opinion of the Supreme Court of Nebraska.  See
id. at
462–63 (citing State v. Blackman, 580 N.W.2d 546 (Neb. 1998)). 
In this Nebraska case, the court held that the evidence was legally sufficient
to support a finding that the defendant was intoxicated while driving based
only upon an inference drawn from the driver’s intoxication at the scene at a
single-vehicle accident.  See Blackman, 580 N.W.2d at 547–48, 550–51.  

In Kuciemba, the
Court of Criminal Appeals did not expressly overrule or disapprove of its prior
opinion in Johnson.  See Kuciemba, 310 S.W.3d at 462–63.  But the Johnson court held
that being intoxicated at the scene of a traffic accident in which the
defendant was the driver was no evidence the defendant was driving while
intoxicated.  See id.  In contrast, the Kuciemba court held that
being intoxicated at the scene of a traffic accident in which the defendant was
a driver is some evidence the defendant was driving while intoxicated. See
Kuciemba, 310 S.W.3d at 462.  Because the analysis in
Kuciemba is contrary to the analysis in Johnson, we conclude that
the Kuciemba court impliedly overruled Johnson.[4]  Compare
id., with  Johnson, 517 S.W.2d at 538.  Therefore, we
cannot rely upon Johnson on remand.   

Appellant asserts that
the legal-sufficiency analysis in the case under review should be different than
the legal-sufficiency analysis in Kuciemba because the evidence in the
two cases is materially different.  The evidence in the case under review is
different from the evidence in Kuciemba in the following respects:  (1)
appellant was not found inside the vehicle; (2) there is no evidence that appellant
was bleeding or had sustained a recent injury; (3) there is no evidence that
appellant had a strap mark across his chest where his seat belt would have been;
(4) the alcohol concentration in appellant’s breath was not twice the legal
limit; and (5) there is no evidence as to whether alcoholic beverages or
containers were found in appellant’s vehicle or at the scene.  

Based on these differences,
the case under review does not fall completely within the holding in Kuciemba. 
Nonetheless, the Kuciemba court held that a person’s intoxication at the scene of an accident in which
the person was driving a vehicle is some circumstantial evidence that the person
was driving while intoxicated.  See Kuciemba, 310 S.W.3d at 462. 
The Kuciemba court also stated that the
inference that the driver was intoxicated is even stronger when the accident is
a single-vehicle collision with an inanimate object.  See id.  The case
under review involves a single-vehicle collision with a fence pole.  The Kuciemba
court also stated that the absence of skid marks on the road indicated that
appellant did not apply the brakes.  See id. at 461.  The Kuciemba
court concluded that a driver’s failure to brake is some evidence that the
accident was caused by intoxication.  See id. at 463.

Though the Kuciemba
court also relied upon other evidence that is not present in the case under
review, the high court cited with approval the Blackman case from
Nebraska.  See Kuciemba, 310 S.W.3d at 462–63.  In Blackman, the court
held that the evidence was legally sufficient to support a finding that the
defendant was intoxicated while driving based only upon an inference drawn from
the driver’s intoxication at the scene of a single-vehicle accident.  See
Blackman, 580 N.W.2d at 547–48, 550–51.  As in the case under review, in Blackman
(1) the defendant was not found in or on the vehicle;[5] (2) there
was no evidence that the defendant was bleeding or had sustained a recent
injury;[6]
(3) there was no evidence the defendant had a strap mark across his chest where
his seat belt would have been; (4) there was no evidence that the engine in the
defendant’s vehicle was still warm or was running when the officer arrived, (5)
the alcohol concentration in defendant’s breath was not twice the legal limit;
and (6) there is no evidence as to whether alcoholic beverages or containers
were found in defendant’s vehicle, at the scene, or on the defendant’s person. 
See id.  Based upon the guidance provided by the Kuciemba court,
we conclude that, viewing the evidence in the light most favorable to the
verdict, a rational trier of fact could have found beyond a reasonable doubt
that appellant was intoxicated while operating a motor vehicle in a public
place.  See Tex. Penal Code Ann.
§§ 49.01(2)(A)–(B), 49.04(a); Kuciemba, 310 S.W.3d at 462–63. 
Accordingly, we overrule appellant’s first issue.

Did
the trial court err in denying appellant’s motion to suppress?

In his second issue, appellant contends that the
trial court erred in denying his motion to suppress evidence of the breath test
results.  We review a trial court’s ruling on a motion to suppress under an
abuse-of-discretion standard.  See Villareal v. State, 935 S.W.2d 134,
138 (Tex. Crim. App. 1996).  At a hearing on a motion to suppress, the trial
court is the sole judge of the credibility of witnesses and the weight to be
given to their testimony.  Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990).  We afford almost complete deference to the trial court’s
determination of historical facts supported by the record, as well as to mixed
questions of law and fact dependent on the determination of a witness’s
credibility and demeanor.  See State v. Ross, 32 S.W.3d 853, 856 (Tex.
Crim. App. 1997).  We consider issues that present purely legal questions under
a de novo standard.  See id.

The Court of Criminal Appeals has held that, when
evidence of alcohol concentration, as shown by the results of analysis of
breath specimens taken at the request or order of a peace officer, is offered
in the trial of a driving-while-intoxicated offense, (1)
the underlying scientific theory has been determined by the legislature to be valid; (2) the
technique applying the theory has been determined by the legislature to be
valid when the specimen was taken and analyzed by individuals who are certified
by, and were using methods approved by the rules of, the Texas Department
of Public Safety; and (3) the trial court must
determine whether the technique was properly applied in accordance with the
department’s rules, on the occasion in question.  See Reynolds v.
State, 204 S.W.3d 386, 390–91 (Tex. Crim. App. 2006) (applying standard in Kelly
v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992) to breath-test
results).  Appellant limits the scope of his second issue to this third prong,
claiming that Trooper Hackney did not properly conduct appellant’s breath test
on the Intoxilyzer in accordance with regulations set forth by the Department
of Public Safety because he did not verify the temperature of a reference
sample.  

The Department of Public Safety is authorized in the
Texas Transportation Code to “adopt rules approving satisfactory analytical
methods.”  Tex. Transp. Code Ann.
§ 724.016(b)(1) (West 2011).  The Department of Public Safety has set forth the
requirements for breath-alcohol-testing procedures in the Texas Administrative
Code.  See 37 Tex. Admin. Code
§ 19.4(c) (2011) (Dep’t of Pub. Safety, Approval of Techniques, Methods, and
Programs).  As pertinent in the case under review, the regulations require that
all approved breath-alcohol testing techniques include the following:

The analysis of a
reference sample, the results of which must agree with the reference sample
predicted value within plus or minus 0.01g/210 L, or such limits as set by the
scientific director.  This reference analysis shall be performed in conjunction
with subject analyses. 

Id. § 19.4(c)(4). 

            A presumption of
admissibility applies when the procedures prescribed by the Department of
Public Safety are followed.  Reynolds, 204 S.W.3d at 390; Stevenson v.
State, 895 S.W.2d 694, 696 (Tex. Crim. App. 1995); see also Mireles v.
Tex. Dep’t of Pub. Safety, 9 S.W.3d 128, 131–32 (Tex. 1999) (concluding the
Texas Legislature has recognized the scientific theory and technique behind the
breath tests and prescribed the procedures to use).  Appellant claims that
Trooper Hackney did not follow the Department of Public Safety procedures based
on the trooper’s testimony that he did not check the reference sample
temperature.

The record reflects that appellant’s Intoxilyzer test
was administered by Trooper Hackney, who is certified to operate the machine by
the Department of Public Safety.  Trooper Hackney testified that, believing the
machine checked the temperature, before administering the test to appellant he
did not check the temperature of a reference sample on the Intoxilyzer.  He
conducted a diagnostic test on the Intoxilyzer, which did not identify or
indicate any invalid conditions; then appellant gave two breath samples, taken
three minutes apart.  The Intoxilyzer did not indicate any malfunction.  

Alva Barbosa, a forensic scientist and technical
supervisor familiar with the Intoxilyzer, testified at first that Trooper
Hackney, in failing to check the temperature of the reference sample, did not
conduct the test in accordance with the Texas Breath and Alcohol Testing
regulations.  Despite this hearing testimony, Barbosa later testified that the
current regulations no longer require that the reference sample be taken at a
known temperature and that Trooper Hackney administered the test in accordance
with regulations.  Barbosa attributed her prior testimony—that the test was not
in compliance with regulations—to a lapse in memory given that the regulations
had been revised several months before appellant’s test.

For support that Trooper Hackney did not properly
administer the test, appellant refers to testimony about a user’s manual for
the Intoxilyzer, which sets forth the required temperature for the reference
sample.  We consider whether Trooper Hackney applied the proper technique in
accordance with rules promulgated by the Department of Public Safety in
administering the test.  See Reynolds, 204 S.W.3d at 390.  Although a
previous code provision required that the sample mixture be maintained at a
known temperature, that provision has been deleted.  See 30 Tex. Reg.
5729–30 (2005) (codified at 37 Tex.
Admin. Code §§ 19.1–19.7) (Tex. Dep’t Pub. Safety) (providing that
sections 19.1 through 19.7 of the Administrative Code were substantially
revised, such that 19.3(c)(4) became 19.4(c)(4)). Under the current provision,
the known temperature requirement no longer applies.  See 37 Tex. Admin. Code § 19.4(c).

Barbosa also testified that the test results were not
invalid.  According to Barbosa, if the machine had detected any invalid
condition, the test would have been discontinued and the test would have been
invalidated.  Barbosa testified, as pertinent to the reference sample, the
Intoxilyzer will continue to perform a test so long as the reference sample solution
is within a tolerance of .010 of the predicted alcohol concentration.  Barbosa
explained that there is no indication that the reference sample temperature was
out of the acceptable tolerance range when the test was administered to
appellant.[7] 
Barbosa testified that because the reference sample was within the prescribed
tolerance range when appellant submitted his breath samples, the Intoxilyzer
allowed the test to continue, and the results were valid.  

The evidence in the record establishes that the
readings produced by the Intoxilyzer were obtained in conformity with
procedures prescribed in the governing regulations.  The regulations do not
require a known temperature for the reference sample.  See 37 Tex. Admin. Code § 19.4(c).  Therefore,
the breath-test results were admissible, and the trial court did not err in
denying appellant’s motion to suppress.  We overrule appellant’s second issue.

The trial court’s
judgment is affirmed.  

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

Panel consists of Chief Justice Hedges and
Justices Frost and Christopher. (Christopher, J., concurring).

 

Publish —
Tex. R. App. P. 47.2(b).

 









[1] The Johnson
court stated that the investigating police officer “could not testify at what time
the ‘accident’ occurred.”  Johnson v. State, 517 S.W.2d 536, 538
(Tex. Crim. App. 1975).  It is unclear why the Johnson court used
quotation marks in this sentence.  Though our concurring colleague concludes
that the court may have been skeptical that an accident had occurred, the Johnson
court’s opinion belies this notion.  See post at p.2, n.1.  The court
stated as a fact that the police officer “arrived at the scene of an accident.”
Id. at 537.  The court quoted testimony in which the officer described
“the scene of the accident” as “a small, two-lane blacktop road.” Id. 
The court quoted the officer’s testimony during which he made a drawing of the
“final resting place of the vehicle” and stated that he could not find anything
on the road that would cause the vehicle to be in the ditch or to run into the
pole. Id.  The Johnson court did not state or suggest that
appellant intentionally drove the vehicle into the ditch.  See id. at
537–38.





[2]  Our
concurring colleague concludes that the appellant in Johnson did not
admit that he was driving the vehicle when the accident occurred.  See post
at p.2, n.1.  There were several people standing on the other side of the
street, and the officer asked them, “‘Were one of you driving this vehicle?’”  Johnson,
517 S.W.2d at 537.  The appellant in Johnson answered “‘I was driving.’”
Id.  The Johnson appellant did not explicitly state that he was
driving when the accident occurred.  But when an officer investigating why a
vehicle is in a ditch asks who was driving the vehicle, it is implied in the
officer’s question that he is asking who was driving the vehicle when it went
into the ditch.  The Johnson court concluded that the record contained
no evidence of various matters, but it did not conclude that there was no
evidence that the appellant was driving the vehicle when the accident
occurred.  See id. at 538. 





[3] This
court’s opinion on original submission in Kuciemba was not designated
for publication, and this opinion does not have any precedential value.  See
Tex. R. App. P. 47.7(a).





[4] Our
concurring colleague distinguishes the facts of Kuciemba from the facts
of Johnson, stating that in Johnson there was no admission as to
loss of control and no description of how or why the vehicle ended up in the
ditch.  See post at p. 3.  But there was no admission of loss of control
in Kuciemba, nor was there a description of how or why the vehicle ended
up in the ditch.  See Kuciemba, 310 S.W.3d at 461–63.





[5]  In Blackman,
the vehicle was a motorcycle.  See Blackman, 580 N.W.2d at 547–48.





[6]  When the
police officer arrived at the scene, the defendant was lying on the ground and
was not moving.  See Blackman, 580 N.W.2d at 548.  When the officer asked the defendant
a question, he did move and responded to the officer’s question.  See id. 
The defendant insisted that he could still ride his motorcycle.  See id.


   





[7] Appellant
points to evidence that the next test administered on that machine four days
later yielded an indication of a “reference fail.”  But, Barbosa testified that
the invalid test in that instance could have been attributed to the environment
or any “number of things”; she did not know and did not testify that the
reference sample, itself, caused the failure.